UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOEL ROBBINS and
LISA DELSANTE,

                            Plaintiffs,

-against-                                                     6:24-cv-1223 (LEK/ML)

UNITED VAN LINES, LLC, *et al.*,

                            Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On October 7, 2024, Plaintiffs Joel Robbins and Lisa Delsante commenced this action

against Defendants United Van Lines, LLC ("United"), Daryl Flood Relocation, Inc. ("Daryl"),

and The Suddath Companies ("Suddath"), in a nine-count complaint alleging a violation of the

Carmack Amendment, 49 U.S.C. § 14706 ("Carmack"), and a host of state law claims arising out

of the same incident. Dkt. No. 1 ("Complaint"). United moved to dismiss counts two through

nine arguing that Carmack preempts all of Plaintiffs' state law claims. Dkt. No. 14. ("United's

Motion"). Daryl and Suddath separately moved to dismiss for lack of personal jurisdiction and

for failure to state a claim under Carmack. Dkt. No. 17. ("D&S Motion"). Plaintiffs filed

responses to United's Motion and D&S's Motion. Dkt. Nos. 20 ("Response to United"), 23

("Response to D&S"). Defendants filed replies. Dkt. No. 22 ("United's Reply"), 24 ("D&S'

Reply). Plaintiff also cross-moved to file an amended complaint. Dkt. No. 23.

For the reasons that follow, Defendants' motions to dismiss are granted. Plaintiffs' cross-

motion to file an amended complaint is granted in part and denied in part.

## II.     BACKGROUND

The following facts are set forth as alleged in the Complaint, as well as the attached exhibits.

For jurisdictional purposes, Defendant United is a citizen of the state of Missouri. Compl. ¶ 9. Defendant Daryl is a citizen of the state of Texas. *Id*. ¶ 10. Defendant Suddath is a citizen of the state of Florida. *Id*. ¶ 11.

In 2022, Plaintiffs, a married couple, "entered into an agreement with United" to pack, store and move "their personal property from Texas to . . . New York." *See id*. ¶¶ 22–23, 25. "Plaintiffs delivered their personal property to United in good condition." *Id*. ¶ 24. And the "bill of lading promise[d] that United would pack the property on October 11, 2022, and deliver it no later than October 18, 2022." *Id*. at ¶ 26; *see also* Plaintiffs' Ex. 1 ("Bill of Lading").

The Bill of Lading outlines the terms of the agreement between the Plaintiffs and United and specifically identifies "United as the 'carrier'" and "Suddath as the 'agent' . . . ." *Id.* ¶¶ 27–28. However, Plaintiffs allege "Defendants have offered inconsistent information as to the allocation of duties and responsibilities among the three of them . . . . obscuring who packed [their] personal property, who transported it, and who unpacked it." *Id.* ¶ 29. Plaintiffs offer several examples to wit, including a "clandestine and transient system" whereby "United transported and stored their personal property among multiple different storage locations, all or some of which are owned or operated by Suddath, during the period between Plaintiffs' initial delivery of their personal property and the move to New York." *Id.* ¶ 30. As well as "boxes that identified Daryl as the mover" when Plaintiffs' belongings finally arrived in New York. *Id.* ¶ 31.

Plaintiffs suffered as a result of "Defendants['] botched [] shipment of Plaintiffs' property . . . ." *Id.* ¶ 32.

First, "Defendants lost important pieces of Plaintiffs' [personal property]" and "Plaintiffs remain unable to confirm what was lost with certainty, because [of] Defendants' sloppy and ad hoc 'delivery' of their personal property." *Id.* ¶¶ 34, 36. Next, Plaintiffs allege Defendants damaged their property in transit, citing, inter alia, a "dented and scratched Stickley sideboard, two custom-made leather armchairs with moisture stains, two wing-back chairs with scratched and dented wooden legs and torn fabric, dented and scratched dresser from bedroom set, scratched and dented armchair, and scratched and dented Chinese bench." *Id.* ¶¶ 37, 40.

Finally, "Defendants left the balance of Plaintiffs' personal property to be damaged or destroyed by the elements," despite Plaintiffs providing "specific[] and express[]" instructions to deliver "the[ir] personal property [to] specific rooms [in the Residence]." *Id.* ¶¶ 42, 43. Specifically, Plaintiffs allege "Defendants knowingly failed to unpack the[ir] personal property in appropriate rooms[,] . . . . bring the personal property into the Residence . . . . [and] instead. . . . placed Plaintiffs' personal property in an adjacent barn and stable." *Id.* ¶¶ 44–45. Both of which at the time were "open to the elements, uninsulated, and oftentimes occupied by rodents or other vermin." *Id.* ¶ 46. And because Plaintiffs could not physically move the property on their own and Defendants' failure to deliver the property according to their specifications, "Plaintiffs were forced to watch as their lifetime of personal property succumbed to the unsuitable storage conditions within the barn and stable." *Id.* ¶ 47.

Plaintiffs paid a total of $38,176.14 for the cost of their move and allege the value for their damaged or missing property is roughly $250,000. *Id.* ¶¶ 48, 49. Further, Plaintiffs spent approximately $12,900 to "mitigat[e] the[ir] damage[s]" to their property due to its being left outside their Residence. *See id.* ¶ 50.

3

Plaintiffs informed Defendants of their damages and Defendants initiated a "sham investigation." *Id.* ¶¶ 51, 52 (internal quotes omitted). When Plaintiffs attempted to contact Defendants Daryl and Suddath, United "insisted . . . that Plaintiffs cease and desist their contacting [them] . . . . because the two entities only ever acted as United's agents." *Id.* ¶ 53. Plaintiffs believe this request was made to impede Daryl or Suddath from "provid[ing] compromising information in response to Plaintiffs' inquiries." *Id.* ¶ 54.

At the end of the investigation, Plaintiffs were not offered any "meaningful compensation" and allege that Defendants' never intended to offer said compensation. *Id.* ¶ 57.

Plaintiff brings suit alleging: (1) Violation of the Carmack Amendment, 49 U.S.C. § 14706, against all Defendants; (2) Breach of Contract against United, (3) Breach of the Implied Covenant of Good Faith and Fair Dealing against United; (4) Bailment against all Defendants; (5) Conversion against all Defendants; (6) Negligence and Gross Negligence against all Defendants; (7) Unjust Enrichment against all Defendants; (8) Violation of N.Y. Gen. Bus. Law § 349 against all Defendants; (9) Violation of N.Y. Gen. Bus. Law § 350, False Advertising against all Defendants. *Id.* ¶¶ 59–108.

Plaintiffs seek, inter alia, compensatory, consequential, and punitive damages; attorney's fees; and costs associated with the current action. *See* Compl. at 15.

## III.    LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. *See Allaire Corp. v.*

4

*Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Id.* at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court has stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. *Id.* at 679.

Further, in reviewing a motion to dismiss for lack of personal jurisdiction, the plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant." *Moussaoui v. Bank of Beirut & the Arab Countries*, No. 23-7332, 2024 WL 4615732, at *1 (2d Cir. 2024) (citation omitted). A plaintiff "must make a prima facie showing that jurisdiction exists . . . . [by] making legally sufficient allegations of jurisdiction" that, if true, "suffice to establish jurisdiction over the defendant." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (internal quotation marks omitted). Specifically, the plaintiff must show that jurisdiction is proper under the "forum state's personal jurisdiction rules." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). Thus, in the instant case, Plaintiffs can only prevail if their allegations comport with "the specific provisions of New York law to determine whether it permits the exercise of jurisdiction over a given defendant." *Moussaoui*, 2024 WL 4615732, at

*2. However, "a plaintiff may not rely on 'conclusory statements' and must offer 'factual specificity' in order to establish personal jurisdiction." *Moussaoui*, 2024 WL 4615732, at *1 (citing *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)). Further, the Second Circuit has said courts "may consider affidavits and other materials beyond the pleadings" to assist in making such jurisdictional determinations. *Doherty v. Bice*, 101 F.4th 169, 172 (2d Cir. 2024) (internal quotes omitted).

## IV.    DISCUSSION

Defendant United and Defendants Daryl and Suddath moved to dismiss the Complaint on separate grounds. United moves under Fed. R. Civ. P. 12(b)(6) dismissing the state law claims alleged in Counts two through nine on the grounds that such claims are preempted by the Carmack Amendment and 49 U.S.C. § 14501(c)(1). United's Mot. at 8–13. Alternatively, United moves to dismiss Plaintiffs' state law claims on the grounds they fail to state viable claims under the state laws of New York and Texas. *Id*. at 20–25. Defendants Daryl and Suddath move to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim. D&S' Mot. at 5–6. The Court will handle each motion in turn.

### A.  United's Motion

Plaintiffs and United do not dispute whether the Carmack Amendment applies in this case. Instead, the disagreement is over how it applies. Plaintiffs aver that Carmack does not preempt its state law claims against United because, inter alia, the company held itself out as a broker of moving services, rather than as a motor carrier of those services for the purposes of Carmack. *See* Resp. to United's Mot. at 4–6. For its part, United argues that it is a motor carrier, not a broker, and that because of its carrier status Carmack bars all state law claims that arise

from the facts surrounding the instant action. *See* United's Reply at 1–5. Therefore, in the instant

motion, United's status as either a motor carrier or broker is the dispositive issue.

1.    *United is a "motor carrier" under the Carmack Amendment.*

The Carmack Amendment addresses the liability of common carriers for goods lost or

damaged in interstate commerce. *See* 49 U.S.C. § 14706 *et seq*. It provides "shippers with the

statutory right to recover for the actual loss or injury to their property caused by *any* of the

carriers involved in the shipment." *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 377 (2d Cir.

1994). Congress' intent behind the law was "to provide interstate carriers with reasonable

certainty and uniformity in assessing their risks and predicting their potential liability." *Project

Hope v. M/V IBN SINA*, 250 F.3d 67, 73 n.6 (2d Cir. 2001). And in doing so, it was clear that the

legislature meant "to supersede all state regulations with reference to it." *Adams Express Co., v.

Croninger*, 226 U.S. 491, 505–06 (1913). Thus, there can be no doubt that if a carrier-defendant

is liable under the Carmack Amendment, the law preempts a "shipper's state and common law

claims against a carrier for loss or damage to goods during shipment." *Project Hope*, 250 F.3d

67, 73 n.6 (quoting *Ward v. Allied Van Lines, Inc.*, 231 F.3d 135, 138 (4th Cir. 2000)).

Key to determining whether Carmack's preemptive force applies in the instant action is

determining United's status as either a carrier or broker during the relevant period outlined in the

Complaint. *See AIOI Ins. Co. v. Timely Integrated, Inc.*, No. 08-CIV-1479, 2009 WL 2474072, at

*2 (S.D.N.Y. Aug. 12, 2009) ("[T]he Carmack amendment imposes liability on 'carriers' but not

on 'brokers.'"). A "motor carrier" is "a person providing motor vehicle transportation for

compensation." 49 U.S.C. § 13102 (14). "[T]ransportation" means "equipment of any kind

related to the movement of passengers or property," and "services related to that movement,

including arranging for, receipt, delivery, elevation, transfer in transit, . . . storage, handling,

packing, unpacking, and interchange of passengers and property." *Id.* § 13102(23). Conversely, a

"broker" is "a person, *other than a motor carrier or an employee or agent of a motor carrier,*

*that* . . . sells, offers for sale, negotiates for, or holds itself out . . . as selling, providing, or

arranging for, transportation by motor carrier for compensation." *Id.* § 13102(2) (emphasis

added). "In deciding whether an entity acted as a carrier or a broker, courts 'look to how the

party acted during the specific transaction at issue, which includes the understanding among the

parties involved [and] consideration of how the entity held itself out.'" *Vanguard Graphics LLC*

*v. Total Press Sales & Serv., LLC*, No. 18-CV-55, 2020 WL 6059872, at \*4 (N.D.N.Y. Oct. 13,

2020) (cleaned up). "However, motor carriers 'are not brokers within the meaning of this section

when they arrange or offer to arrange the transportation of shipments *which they are authorized*

*to transport and which they have accepted and legally bound themselves to transport.*'" *AIOI*

*Ins. Co.*, 2009 WL 2474072, at \*2 (citing 49 C.F.R. § 371.2(a)) (emphasis added).

    In the instant action, Plaintiff avers that United operated "as a mere broker of mover

services." *See* Compl. ¶ 104. But Plaintiffs' allegations are confusing. Setting aside the fact that

Plaintiffs allege nearly no facts to suggest United acted as a broker beyond this conclusory

statement, the Complaint suggests that Plaintiffs entered into an agreement under the Bill of

Lading[1] with United as the carrier of their personal items. *See id.* ¶ 25. ("Plaintiffs entered into

---

[1] Bills of lading control the parties' rights and responsibilities under a shipper-carrier agreement.
*See Int'l Knitwear Co. v. M/V Zim Canada*, No. 92-CV-7508, 1994 WL 924203, at \*3 (S.D.N.Y.
Oct.6, 1994*)* ("Bills of lading are contracts between shippers and carriers that spell out the
carrier's obligation to deliver specific goods to specific people or places."); *Cont'l Ins. Co. v.*
*Polish S.S. Co.*, 346 F.3d 281, 282–84 (2d Cir. 2003) (holding that Plaintiff was subject to an
arbitration clause outlined in a Bill of Lading and that such agreements should be "carefully if
not restrictively construed.") (quoting *Imp. Exp. Steel Corp. v. Mississippi Valley Barge Line*
*Co.*, 351 F.2d 503, 506 (2d Cir. 1965)); *Cap. Partners Int'l Ventures, Inc. v. Danzas Corp.*, 309
F. Supp. 2d 1138, 1143 (N.D. Cal. 2004) ("The Bill is a contract between the shipper and carrier
and continues to govern the rights and obligations of parties until delivery.").

an agreement with United to move their personal property from Texas to the Residence in New York."); *see also id*. ¶ 30 ("Plaintiffs later learned that United transported and stored their personal property among multiple different storage locations . . . .").

Moreover, the Bill of Lading conspicuously labels United as the carrier and another entity ("SUDDATH RELOCATION SYST") as its agent. *See* Bill of Lading at 3. Courts in this Circuit and others have recognized that by bringing a suit under a bill of lading, plaintiffs "accept[] the [terms of] the carrier's bill of lading." *A.P. Moller-Maersk A/S v. Ocean Express Miami*, 550 F. Supp. 2d 454, 464 (S.D.N.Y. 2008) (citing *Kukje Hwajae Ins. Co., Ltd. v. M/V HYUNDAI LIBERTY*, 408 F.3d 1250, 1254 (9th Cir.2005)). In this case, that would mean an acceptance of United's status as a carrier.

However, Plaintiffs contend that this Court should delay ruling on United's carrier status until after discovery, when the Court can "make detailed and consequential findings of fact." *See* Resp. to United at 4. To support this proposition, Plaintiffs cite to cases such as *Vanguard*, and *Schenker, Inc. v. Arnoff Moving & Storage, Inc.*, No. 17-cv-2967, 2018 WL 2075290, at *8 (E.D.N.Y. Feb. 21, 2018), *report and recommendation adopted*, No. 17-CV-2967, 2018 WL 1377304 (E.D.N.Y. Mar. 19, 2018). But these cases are inapposite.

In *Vanguard*, the court held that granting summary judgment for the Defendant on the issue of whether it was a broker or a carrier required a fact-dependent inquiry better suited for trial. *See Vanguard*, 2020 WL 6059872, at *3–6 (N.D.N.Y. Oct. 13, 2020). The dispute was over whether the Carmack Amendment applied to the Defendant, who held themselves out as a broker. *Id*. Defendant argued that they were a broker of shipping services because they merely arranged for the plaintiff's "transportation of [their shipment] through [other] carriers." *Id.* at 3. Plaintiffs argued that the Defendant was a carrier because of the nature of their "door-to-door

service" which included packing, transportation, and installation of the plaintiff's equipment. *See id*. at *3–4. The inconsistency in Defendant's alleged status as a broker that made "use of 'common carriers' at all phases" but also took "general responsibility for coordinating the transportation" of the plaintiff's equipment led the court to deny summary judgment. *See id*. at *4–5.

In *Schenker, Inc.*, the court denied a defendant's motion to dismiss a complaint based on the Carmack Amendment because the facts did not allow for a "legal determination as to the applicability of the Carmack Amendment." *Schenker, Inc*., 2018 WL 2075290, at *8. The issue was whether Plaintiff, a broker, was required to sue a carrier under the Carmack Amendment for indemnity when their rights were not governed by a bill of lading. *See* 2018 WL 2075290, at *5 ("What is less clear, and where courts have differed, is to what extent the Carmack Amendment governs the liability of a carrier as to a non-shipper broker [who is not subject to a Bill of Lading] . . . ."). The plaintiff averred that Carmack did not govern them because they were not parties to the original bill of lading with the defendant. *Id*. at *3. The defendant countered, arguing the plaintiff's suit essentially made them "an assignee of its customer shipper's rights" and thus subject to the Amendment. In its ruling, the court consistently relied on, or referred to, the bill of lading to determine the plaintiff's rights to recovery. *See, e.g.*, *id.* at 7 ("[It is not] apparent what if any rights of recovery Plaintiff has under the bill [of lading]."); *id.* ("[T]here are insufficient facts before the Court to plausibly show that the minimum condition precedent for standing under the Carmack Amendment—that Plaintiff be 'entitled to recover under the receipt or bill of lading'—has been satisfied."). Because it was not clear that Carmack applied to the plaintiff's claims, the court allowed that case to proceed to discovery.

Whatever additional fact discovery was needed in those cases is not necessary here. First, it is undisputed that Carmack applies. Plaintiffs are shippers, not brokers. They have sued United under the Carmack Amendment and brought their lawsuit against United based on the terms of the Bill of Lading. *See* Compl. ¶¶ 59–64; *see also* Bill of Lading. Second, United does not dispute that it is the carrier in this case, and that Carmack governs Plaintiffs' action against them. United's Mot. at 7–14. Finally, to the extent there is any confusion about United's status as the carrier, it seems to be borne out of Plaintiffs' identifying United as a broker in the final count of their Complaint. *See* Compl. ¶ 104. Otherwise, throughout the Complaint, Plaintiffs seem to allege, and United does not appear to contest, that "Plaintiffs entered into an agreement with United to move their personal property from Texas to . . . New York," that "United transported and stored their personal property among multiple different storage locations," and that "[t]he bill of lading identifies . . . United as the 'carrier.'" *See id.* ¶¶ 25, 27–30. Thus, this Court finds that United is indeed a "motor carrier" for the purposes of this Court's analysis under the Carmack Amendment.

2.    *The Carmack Amendment preempts Plaintiffs' state law claims against United.*

Given that the Carmack Amendment applies to United as a motor carrier, the Court now turns to Plaintiffs' state law claims which United argues should be dismissed given the Amendment's preemption over such claims. United's Mot. 14–16. "It is firmly established in the Second Circuit that the Carmack Amendment fully occupies the field of carrier liability and thus completely preempts state common law claims by a shipper against a carrier arising from damage to goods in transit." *Schenker, Inc.*, 2018 WL 2075290, at *5 (citing *Guru Kripa Foods, Inc. v. Inter, Inc.*, No. 10-CV-0229, 2012 WL 3306520, at *10 (E.D.N.Y. Aug. 10, 2012)); *see also Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 381 (2d Cir. 1994). Indeed, "[t]he shipper's

11

sole remedy under Carmack is a statutory cause of action against the carrier for breach of the transportation agreement." *Brody v. Liffey Van Lines, Inc.*, No. 13-cv-5719, 2014 WL 2450807, at *4 (S.D.N.Y. May 29, 2014).

In the instant case, all of Plaintiffs' state law claims against United appear to "repeat and re-allege each and every allegation" arising out of the damages related to their move from Texas to New York. *See* Compl. ¶¶ 65–108. Consequently, counts two through nine of Plaintiffs' Complaint are necessarily preempted and dismissed with prejudice as against United.[2]

**B.  D&S' Motion**

As mentioned above, Darryl and Suddath separately moved to dismiss Plaintiffs' Complaint under 12(b)(2) for lack of personal jurisdiction and, alternatively, under 12(b)(6) for failure to state a claim. D&S' Mot. at 5–6. The gravamen of their argument is that: 1) Darryl and Suddath have insufficient contact with New York such that personal jurisdiction over either company would be proper, 2) that Plaintiffs have incorrectly identified Darryl and Suddath Defendants in the instant action, and 3) that the balance of Plaintiffs' claims against them are either preempted by the Carmack Amendment or otherwise fail to allege that Darryl or Suddath played any role in Plaintiffs' move. D&S Mot. 8–21.

In opposition, Plaintiffs aver this Court has personal jurisdiction over Darryl and Suddath, or alternatively, that they should be afforded jurisdictional discovery the ascertain their involvement. Resp. to D&S Mot. at 3–8. Further, Plaintiffs argue their claims against Darryl and Suddath have been adequately pled and warrant discovery. *Id*. at 8–15.

---

[2] Because the Court determines Plaintiffs' state law claims are preempted by the Carmack Amendment, it will not address the merits of United's Federal Aviation Administration Authorization Act defense.

For the following reasons, the Court grants D&S' Motion on 12(b)(2) grounds and, given the lack of jurisdiction over these Defendants, the Court denies their 12(b)(6) motion as moot.

1.    *Daryl and Suddath move to dismiss for lack of Personal Jurisdiction.*

The Fourteenth Amendment's Due Process Clause governs a court's power to exercise personal jurisdiction. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Exercising this power requires that a defendant have "such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Id* (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17). This contacts-based analysis has led to two forms of personal jurisdiction: general and specific personal jurisdiction. *See Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011).

In the instant case, Plaintiffs and the Moving Defendants appear to agree that general jurisdiction is improper here. *See* Resp. to D&S at 4; *see also* D&S Mot. at 10. Therefore, the Court will only analyze whether Plaintiffs have adequately pled specific jurisdiction over Daryl and Suddath.

On a motion to dismiss for lack of personal jurisdiction, New York courts must ask two questions to determine whether there is specific jurisdiction over a defendant. *My Goals Sols., Inc. v. Coiana,* No. 24-CV-1900, 2025 WL 833878, at *5 (S.D.N.Y. Mar. 14, 2025). First, whether New York's long-arm statute would subject the defendant to personal jurisdiction. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013). Second, if the statute permits the exercise of jurisdiction over the defendant, whether the exercise of jurisdiction meets the standards that Due Process Clause demands. *See Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017).

N.Y. CPRL Section 302 outlines how "New York courts may exercise [specific personal] jurisdiction over non-domiciliaries." *Russell v. Titanium LLC*, No. 123-CV-1408, 2024 WL 1580148, at *2 (N.D.N.Y. Apr. 11, 2024). Jurisdiction is proper where a Plaintiff shows that the non-domiciliary has at least one of the following contacts with the state:

> (1) the transaction of any business within the state or contracts anywhere to supply goods or services in New York;
>
> (2) the commission of a tortious act within this state;
>
> (3) the commission of a tortious act without the state causing injury within the state so long as the tortfeasor either (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services render, in New York or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> (4) the ownership, use, or possession of any real property within New York.

N.Y. C.P.R.L. § 302(a)(1)–(4).

The Moving Defendants argue this Court cannot exercise jurisdiction over them for several reasons. *See* D&S Mot. at 8–13. First, they allege that neither organization has any "substantial contacts with the State of New York" nor do they "conduct business in the State." *Id.* at 8. Second, that Daryl and Suddath "are separate and distinct corporate entities from each other," and from two non-parties, Dependable Relocation Services, Inc. (the "Warehouse Receipt" issuer) and "SUDDATH RELOCATION SYST" (the "agent/broker on the United Bill of Lading") who were the entities, at various points, involved with Plaintiffs' move. *See id.* at 9–12; *see also* Dkt. No. 17-3 ("Gannon Decl."); Dkt. No. 17-4 ("Smith Decl."). Finally, Defendants assert that Plaintiffs have not sufficiently alleged any facts suggesting either Daryl or Suddath purposefully availed themselves of New York's privileges, that there is any nexus between Plaintiffs' claims and the Moving Defendants actions, or that personal jurisdiction would

"comport with 'traditional notions of fair play and substantial justice.'" *Id*. at 10–13 (quoting *International Shoe Co.*, 326 U.S. at 316.).

Plaintiffs assert that this Court has specific jurisdiction over Daryl (a citizen of Texas) and Suddath (a citizen of Florida) because: 1) "their conduct giving rise to this action occurred . . . within this Court's jurisdiction," and 2) "that Plaintiffs . . . intended to reside in this Court's jurisdiction, and . . . therefore [Defendants'] knew that [their] actions, regardless of where committed, affected and will affect Plaintiffs in this Court's jurisdiction." Compl. ¶¶ 10, 11, 14. Further, Plaintiffs point to the fact that the boxes used to transport their personal property "identified Daryl as the mover," *id*. ¶ 31, Defendants' own communications about their involvement in a "sham investigation," *id*. ¶¶ 53–57, and United's labeling Darryl and Suddath as "disclosed household agents," *id*. ¶ 105, as pleadings that necessarily place Darryl and Suddath within this Court's jurisdiction. *See* Resp. to D&S' Mot. at 4–7.

At best as this Court can understand, Plaintiffs' argument appears to be an attempt to plead specific personal jurisdiction pursuant to N.Y. C.P.R.L. § 302(a)(3). Therefore, the Court will analyze Plaintiffs' pleading according to the standard set forth in that provision of the statute.

2.      *Plaintiffs have failed to adequately allege specific personal jurisdiction for either Darryl or Suddath under CPLR § 302(a)(3).*

A New York court can obtain personal jurisdiction over an out-of-state defendant under CPLR Section 302(a)(3) if: "(1) [t]he defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) *the defendant expected or should reasonably have expected the act to have consequences in the state*; (5) the defendant derives substantial revenue from interstate or

international commerce." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt.*, LLC, 450 F.3d 100, 106 (2d Cir. 2006) (emphasis added). Under the fourth prong, a Plaintiff must make a "*prima facie* showing that Defendant 'expected or should reasonably have expected the act to have consequences in the State.'" *DH Servs., LLC v. Positive Impact, Inc.*, No. 12-CV-6153, 2014 WL 496875, at *13 (S.D.N.Y. Feb. 5, 2014) (quoting *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000)). "[A]bsent allegations of concrete facts known to the defendant that would have led him to foresee being sued in New York or tangible manifestations of his intent to target New York, a court may not exercise personal jurisdiction over a nondomiciliary under 302(a)(3)." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 409 (S.D.N.Y. 2021) (quoting *Royalty Network, Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 424 (S.D.N.Y. 2009)). "[F]oreseeability *must be coupled with evidence of a purposeful New York affiliation*, for example, a discernible effort to directly or indirectly serve the New York market." *Schaadt v. T.W. Kutter, Inc.*, 564 N.Y.S.2d 865 (3d Dep't 1991)) (emphasis added).

Plaintiffs have failed to allege a plausible theory of the Court's jurisdiction over Daryl and Suddath under the fourth prong. This is largely because Daryl and Suddath appear to be the wrong Defendants in the instant action. As to Daryl, the only contacts with the forum state that Plaintiffs allege are that the company's boxes secured their personal items in transit and appeared at their home in New York. *See* Compl. ¶ 31. The Complaint does not allege how Daryl was involved specifically, and instead, engages in group pleading. *Id.* ¶ 33 ("Defendants lost some of Plaintiffs' personal property."); *id.* ¶ 37 ("Defendants damaged some of Plaintiffs' personal property."); *id.* ¶ 42 ("Defendants left the balance of Plaintiffs' personal property to be damaged or destroyed by the elements."). Plaintiffs allege that United "implicated Daryl" by listing the organization as a "disclosed household agent[]," presumably as part of an agreement with the

16

warehouse that stored Plaintiffs' property before it was transferred to New York. *See id.* ¶¶ 30, 105. But Plaintiffs' Complaint explains that "United transported and stored their personal property among multiple different storage locations" and their Bill of Lading shows only "SUDDATH RELOCATION SYST" as the agent. *Compare id.* ¶¶ 30, 105 *with* Bill of Lading at 3. And finally, the Declaration of Daryl's Senior Vice President suggests that Daryl is not a party to any transaction between Plaintiffs, United, or the warehouse(s) where Plaintiffs items were stored. *See generally* Smith Decl. Plaintiffs do not dispute these facts in their opposition. *See* Resp. to D&S Mot. at 6–7.

The lack of any discernable contacts with New York, any allegations specifically pointing to a particular Defendant's wrongdoing, or any attempt to dispute Defendants' motion here does not explain how Daryl's conduct in this action, if any occurred, foreseeably led to the harm Plaintiffs experienced. *See In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) (explaining that "group pleading is not permitted . . . . [i]nstead, [a] plaintiff is required to establish personal jurisdiction separately over each defendant."); *Kernan*, 175 F.3d at 241.

The same pleading defects can be said of the allegations against Suddath. Plaintiffs offer no specific allegations that Suddath engaged in any misconduct in this case, or that it has any contacts with the state of New York, outside of the generic group pleadings levied equally against United and Daryl. *See* Compl. ¶¶ 11, 33, 37, 42. Moreover, the facts that Plaintiffs do provide seem tenuous at best in their connection to the forum state. For example, the Complaint reads "United transported and stored [Plaintiffs'] personal property among multiple different storage locations, all or some of which are owned or operated by Suddath." Compl. ¶ 30.

17

Conspicuously absent from these allegations are where those warehouses are located and how they are relevant to the instant action.

Finally, Plaintiffs do not even provide specific facts that might help the Court discern how, if at all, the named Defendant "Suddath" was involved in this case. Based on Plaintiffs' Complaint, "SUDDATH RELOCATION SYST" appears listed as the "disclosed household agent[]" in Plaintiff's Bill of Lading. *Compare* Bill of Lading at 3 *with* Compl. ¶ 105. D&S' Motion and supporting affidavits appear to show that "The Suddath Companies" (named Defendant in the instant action) is a different entity from "SUDDATH RELOCATION SYST" (the entity identified in Plaintiff's Bill of Lading). *See, e.g.*, D&S Mot. at 11 ("Suddath is a separate and distinct entity from the non-party, 'SUDDATH RELOCATION SYST,' the entity that appeared as agent/broker on the United Bill of Lading"); Gannon Decl. at 2–4 (detailing The Suddath Companies' denial of any contacts with New York or as a party to any transaction between the Plaintiffs, United, Daryl, and the entities Suddath alleges are the responsible parties). Plaintiffs do not appear to rebut this critical point in their opposition. *See* Resp. to D&S' Mot. at 4–6. Together, the lack of specificity in Plaintiffs' allegations against Suddath specifically and the unrebutted facts that suggest Suddath is the wrong party in this suit do not plausibly show how Suddath could have foreseen any tortious conduct in New York.

Accordingly, the Court cannot exercise jurisdiction over either Daryl or Suddath in this case under Section 302(a)(3).

3.    *Plaintiffs have failed to adequately allege specific personal jurisdiction for Suddath under CPLR § 302(a)(4).*

In an attempt to thoroughly address Plaintiffs' claims, the Court also notes that Plaintiffs appear to invoke personal jurisdiction over Suddath under Section 302(a)(4). *See* Resp. to D&S'

Mot. at 6. Section 302(a)(4) "authorizes personal jurisdiction over a non-domiciliary in New York who 'owns, uses, or possesses any real property situated within the state.'" *Donner v. DER SPIEGEL Gmbh & Co. KG*, 747 F. Supp. 3d 681, 693 (S.D.N.Y. 2024) (citing CPLR § 302(a)(4)).

Here, Plaintiffs raise Section 302(a)(4) (in opposition) but make no attempt to plead that Suddath has property in New York. And Suddath's filings are bereft of any facts showing the company has any property in New York. *See, e.g.*, Dkt. No. 17-3. Accordingly, this Court may not exercise jurisdiction over Suddath under 302(a)(4). *See Stroud v. Tyson Foods, Inc*., 91 F. Supp. 3d 381, 390 (E.D.N.Y. 2015) (collecting cases).

4.    *Plaintiffs are not entitled to jurisdictional discovery or leave to amend for jurisdictional purposes.*

Plaintiffs request jurisdictional discovery to cure the apparent defects in their pleadings. Resp. to D&S' Mot. at 7. Daryl and Suddath oppose on the basis that "[a]llowing jurisdictional discovery on the issue . . . of whether [Daryl] or Suddath transacted business in the State of New York" would be futile because, inter alia, Plaintiffs have not plausibly alleged any contacts with New York. *See* D&S' Reply at 7–8.

"Whether to allow jurisdictional discovery is a decision as to which a district court enjoys substantial discretion." *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp*., 667 F. Supp. 3d 83, 150–51 (S.D.N.Y. 2023) (internal quotes omitted). District Courts often deny jurisdictional discovery "if the party seeking [it] cannot articulate a reasonable basis for the court first to assume jurisdiction." *See Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*, 999 F.3d 808, 828 (2d Cir. 2021) (cleaned up). "While the bar for granting jurisdictional discovery is low, and it is appropriately granted where a plaintiff's allegations

19

make a sufficient start toward establishing personal jurisdiction, if the plaintiff has failed to establish a prima facie case for personal jurisdiction, jurisdictional discovery is generally not granted." *Reed Int'l, Inc. v. Afghanistan Int'l Bank*, 657 F.Supp.3d 287, 298 (S.D.N.Y. Feb. 21, 2023) (cleaned up).

Here, Plaintiffs have not made the "sufficient start" the law requires for this Court to grant jurisdictional discovery. As the Court noted above, the main hurdle Plaintiffs face, which they left unrebutted in their opposition brief, is that neither Daryl nor Suddath are alleged to have any contacts with New York, and further, appear to be the wrong parties in the instant suit. *See* Part IV B(2)–(3). While their filings may leave Plaintiffs with "more questions than answers," Resp. to D&S' Mot. at 7, "a court should not approve a fishing expedition when little more exists than [P]laintiff's bare assertions that jurisdiction is proper." *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 782)*, 731 F. Supp. 587, 593 (S.D.N.Y. 1990).

Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is granted,[3] and Plaintiffs' request for jurisdictional discovery is denied.[4]

### C. Plaintiffs' Cross-Motion for Leave to Amend

Plaintiffs moved to amend their Complaint to add two non-parties, "Dependable" and "SUDDATH RELOCATION SYST" ("SRST") noting that "those two entities might be

---

[3] The Court will not address the due process prong of the personal jurisdiction analysis as Plaintiffs fail to plead facts to satisfy New York's long-arm jurisdictional requirements. *See Doe v. Roman Cath. Diocese of Erie, Pennsylvania*, No. 20-CV-257, 2021 WL 5232742, at *5 (N.D.N.Y. Nov. 10, 2021).

[4] Because the Court grants Defendants' 12(b)(2) motion, the Court declines to address the merits of their 12(b)(6) motion. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 (2007); *Sander v. Off. of Comptroller of Currency*, No. 15-CV-5879, 2016 WL 11951030, at *8 (S.D.N.Y. Sept. 29, 2016) (explaining that "[b]ecause dismissal is required for lack of . . . personal jurisdiction, I do not reach Defendants' arguments with respect to whether dismissal is also warranted pursuant to Rule 12(b)(6).").

responsible for some or all the damages arising from certain aspects of [their] claims" and that their jurisdictional deficiencies "could nevertheless be cured via amendment." Resp. to D&S' Mot. at 2, 15–17. Plaintiffs attached their proposed amended complaint to their opposition to D&S' motion. Dkt. No. 23-3. Daryl and Suddath oppose this motion, arguing that "[t]he factual allegations in the Proposed Amended Complaint . . . mirror the allegations against [Daryl and Suddath]" and that the new complaint, if allowed, "will be subject to an almost exact motion to dismiss for lack of personal jurisdiction." D&S' Reply at 12–14. The Court generally agrees.

"While leave to amend should be freely given pursuant to Federal Rule of Civil Procedure 15, a 'court nevertheless has discretion to dismiss with prejudice if it believes that amendment would be futile or would unnecessarily expend judicial resources.'" *Ivey v. Cnty. of Albany*, No. 20-CV-1617, 2024 WL 1306910, at *3 (N.D.N.Y. Mar. 27, 2024) (quoting *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 372 (E.D.N.Y. 2005)). Here, not only is Plaintiffs' proposed complaint still jurisdictionally deficient as to Daryl and Suddath, they make no effort to show the Court how the two new defendants, Dependable and SRST, are subject to this Court's general or specific jurisdiction. Instead, Plaintiffs merely recite the same jurisdictionally deficient group pleadings against these new defendants. *Compare* Compl. ¶¶ 14, 33, 37, 42 *with* Dkt. No. 23-3 ¶¶ 16, 35, 39, 44.

Accordingly, Plaintiffs' current cross-motion for leave to amend is denied, without prejudice, to the extent they seek to file the current proposed amended complaint. *See Spiegal v. Schulmann*, 604 F.3d 72, 78 (2d Cir. 2010) (holding that a denial of leave to amend was appropriate where a proposed amended complaint did not "provide[ ] any basis to demonstrate that the district court would have had personal jurisdiction over [the Defendants]."). However, to the extent that Plaintiffs can elaborate on a good-faith basis for personal jurisdiction over Darryl,

Suddath, Dependable, or SRST, the Court grants Plaintiffs the opportunity to amend the current

Complaint, consistent with this Memorandum-Decision and Order.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant United's motion to dismiss for failure to state a claim as to

Plaintiffs' state law claims, Dkt. No. 14, is **GRANTED**; and it is further

**ORDERED**, that Defendants' Daryl and Suddath's motion to dismiss for lack of

personal jurisdiction, Dkt. No. 17, is **GRANTED**; and it is further

**ORDERED**, that Defendants' Daryl and Suddath's motion to dismiss for failure to state

a claim, Dkt. No. 17, is **DENIED as moot**; and it is further

**ORDERED**, that Plaintiff's cross-motion to file an amended complaint, Dkt. No. 23, is

**GRANTED in part and DENIED in part** for the reasons stated above in Part IV C; and it is

further

**ORDERED**, that if Plaintiffs wish to proceed with this action, they must file an amended

complaint as set forth above within Forty-Five (45) days from the date of the filing of this

Memorandum-Decision and Order. If Plaintiffs timely file an amended complaint, this matter

shall be returned to the Court for further review; and it is further

**ORDERED** that, if Plaintiffs fail to timely file an amended complaint, the Clerk shall

dismiss this action and close this case without further order from the Court; and it is further

**ORDERED**, the Clerk serve a copy of this Memorandum-Decision and Order on all

parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     September 25, 2025
              Albany, New York

LAWRENCE E. KAHN
United States District Judge